**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **TIARE TECHNOLOGY, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Civil Action No.  2:23-cv-250-JRG** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **CHIPOTLE MEXICAN GRILL, INC.** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

COMES NOW Plaintiff Tiare Technology, Inc. ("Tiare") and files this Original Complaint for Patent Infringement against Defendant Chipotle Mexican Grill, Inc. (collectively "Defendant"), alleging as follows:

## I.    INTRODUCTION

1.      Tiare invented groundbreaking mobile-ordering technology in the early 2000s and built its business on its inventions.  The fruits of this technology include a patent portfolio that includes the asserted claims in this case.  The mobile-ordering market has grown exponentially in recent years (and the COVID-19 pandemic has only accelerated the growth).  Bigger companies have disregarded Tiare's patent rights.  Tiare has since resolved its patent disputes with a number of industry participants, including Chick-fil-A, Raising Cane's, Five Guys, McAlister's Deli, El Pollo Loco, Taco Cabana, Petco, Belk, Bed Bath & Beyond, and American Eagle.  Defendant is infringing upon Tiare's Patents, and this case is to enforce Tiare's rights and redress the harm to Tiare.

## II.    NATURE OF THE SUIT

2.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## III.    THE PARTIES

3.      Plaintiff **Tiare Technology, Inc.** is a Delaware corporation that maintains a corporate address at PO Box 8312, Blackwood, NJ 08012.

4.      Upon information and belief, Defendant **Chipotle Mexican Grill, Inc.** is a corporation organized under the laws of the State of Delaware, having its principal place of business at 610 Newport Center Drive, Suite 1400, Newport Beach, CA 92660.  Upon information and belief, Defendant may be served this Complaint by service upon its registered agent: Corporation Service Company D/B/A CSC-Lawyers Inco, 211 E. 7th Street, Suite 620, Austin, TX 78701.

## IV.    JURISDICTION AND VENUE

5.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  Thus, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Defendant.

7.      Defendant has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

8.      This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not

offend traditional notions of fair play and substantial justice. Defendant has committed and continues to commit acts of infringement in this Defendant by, among other things, offering to sell, selling products and/or services, and/or using services that infringe the Asserted Patents, including the Defendant application.

9.       This Court has specific personal jurisdiction over Defendant in this action pursuant to due process and the Texas Long Arm Statute because the claims asserted herein arise out of or are related to Defendant voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products, provided to customers in Texas and in this District.[1]

10.       Venue is proper in this Court under 28 U.S.C. §§ 1400(b).

11.       Defendant is registered to do business in Texas, and upon information and belief, Defendant has transacted business in this District and has committed acts of direct and indirect infringement in this District.

12.       Defendant has regular and established places of business in this District.

13.       Defendant offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas and in this District.  As non-limiting examples, Defendant distributes the Accused Products directly to customers and through

---

[1] The "Accused Products" include Defendant's mobile application.

its partners.  Among other business, Defendant is in the business of providing mobile ordering in this District.

14.     Defendant operates multiple stores in this District.  These stores are regular and established places of business of Defendant.

15.     Defendant distributes its mobile ordering app to users located within this District. The use of the Defendant application in this District provides for mobile ordering from stores in this District.  Defendant puts its mobile ordering application in service within this District to allow users within this District to order from stores in this District in a manner alleged to infringe the asserted claims, as detailed herein.  On information and belief, Defendant derives a significant portion of its revenue from the use, promotion and distribution of its products and services in this District, including through the use of Defendant's application.

16.     A user also is able to order from Defendant stores in the user's local area, which includes this District.  This is including based on the location of the user's mobile device to find nearby stores, including stores in this District.  These locations are held out as a regular and established place of business of Defendant.

17.     The stores within this District are, at the very least, Defendant agents for the purposes of carrying out the mobile-ordering functionality asserted to infringe the claims.

18.     Defendant provides the accused mobile-ordering application, and the application allows a user to select a store, order from the store, and then pick up the order from the store. The store and its employees are agents of Defendant, at least for that purpose.  To the extent the stores are franchisees, Defendant exercises significant control over these franchisees in relation to the mobile-ordering system.  On information and belief, among other aspects of control, Defendant (1) requires franchisees to purchase the hardware and software for mobile ordering (in addition to

upgrades); (2) requires franchisees to participate in mobile ordering; (3) controls how franchisees use their computer systems; (4) has the right to all of the data; (5) has the right to suspect access to the computer systems; (6) having employees visit stores within the District; and/or (7) providing step-by-step instructions to franchisees, including as it relates to mobile ordering.  Defendant also identifies the stores in this District with Defendant's name, including on Defendant's website, telephone or other directory, and/or by listing Defendant's business name (and associated signage) on the store building.  On information and belief, to the extent stores are franchisees, Defendant requires each franchisee to use Defendant's signage and logos throughout the store.   On information and belief, to the extent stores are franchisees, Defendant controls the location of each franchisee, including approving the store location.

## V.    BACKGROUND

### A.    Tiare

19.    Tiare pioneered wireless ordering almost two decades ago, before the inception and proliferation of smartphone and tablets.  Technology executives founded Tiare to revolutionize the service industry through its mobile-ordering technology.

20.    Tiare saw success.  It developed products.[2]  It provided solutions to businesses such as hotels, airports, restaurants, bars, and airlines.[3]  It had partners.[4]  It hired vendors and software developers.   It received numerous praise and awards for its work.[5]   And Tiare's innovations resulted in a portfolio of patents.

**B.    The Asserted Patents**

21.    This cause of action asserts infringement of three of Tiare's patents, United States Patent Nos. 8,682,729 (the "'729 Patent"), 10,157,414 (the "'414 Patent"), and 11,195,224 (the "'224 Patent") (collectively, the "Asserted Patents" or the "Tiare Patents").

22.    A true and correct copy of the '729 Patent, entitled "Patron Service System and Method," and with Julie Werbitt as the named inventor, is attached hereto as Exhibit 1.

23.    The '729 Patent duly and legally issued on March 25, 2014.

24.    A true and correct copy of the '414 Patent, entitled "Patron Service System and Method," and with Julie Werbitt as the named inventor, is attached hereto as Exhibit 2.

---

[2] *See, e.g.*, *Tiare Technology*, https://www.tiaretech.com/; *intelliChaise*, https://web.archive.org/web/20080219175102/http://www.tiaretech.com/; *Tiare Products Provide an Eco-Friendly Platform Capable of Real-Time Updates*, https://web.archive.org/web/20100618052642/http://www.tiaretech.com:80/; *Patented intelliChaise Personal Ordering System available on Apple iPhone & iPod touch*, https://web.archive.org/web/20120411071039/http://www.tiaretech.com/product_sheets/Tiare_in tellichaise_2010.pdf.

[3] *See, e.g.*, *Press Room*, https://web.archive.org/web/20080120233903/http://www.tiaretech.com/pressroom.html; *Tiare In The News*, https://web.archive.org/web/20120227194146/http://www.tiaretech.com/press.html.

[4] *See, e.g.*, *Partners*, https://web.archive.org/web/20120413225638/http://www.tiaretech.com/partners.html.

[5] *See, e.g.*, *Testimonials*, https://www.tiaretech.com/testimonials; *News*, https://web.archive.org/web/20170818210312/http://tiaretech.com/news/.

25.     The '414 Patent duly and legally issued on December 18, 2018.

26.     A true and correct copy of the '224 Patent, entitled "Patron Service System and Method," and with Julie Werbitt as the named inventor, is attached hereto as Exhibit 3.

27.     The '224 Patent duly and legally issued on December 7, 2021.

28.     Tiare is the current owner by assignment of all rights, title, and interest in and under the '729 Patent.  Tiare has standing to sue for infringement of the '729 Patent.

29.     Tiare is the current owner by assignment of all rights, title, and interest in and under the '414 Patent.  Tiare has standing to sue for infringement of the '414 Patent.

30.     Tiare is the current owner by assignment of all rights, title, and interest in and under the '224 Patent.  Tiare has standing to sue for infringement of the '224 Patent.

31.     Tiare also has provided notice to the public of its patented inventions.  Tiare, for example, has listed on its website the patent numbers in its patent portfolio, including the Asserted Patents.[6]

32.     The Asserted Patents result from Tiare's inventive work in the early 2000s.  Tiare's solution, reflected in the Asserted Patents, provides a technical improvement to mobile ordering systems.

33.     Before Tiare's invention, conventional systems had significant drawbacks when it came to enabling a fulsome mobile-ordering system able that would also perform location tracking.[7]  These drawbacks flowed from how those systems were architected.

---

[6] *See, e.g.*, *Wireless Ordering Solutions to Enhance Guest Service and Increase Revenue*, https://web.archive.org/web/20141218065508/https://www.tiaretech.com/; *Tiare Technology*, https://www.tiaretech.com/.

[7] *E.g.*, '729 Patent, 2:21–60.

---

34.     One type of conventional ordering systems were "centrally-located kiosks."[8]  These systems were an attempt to provide some degree of mobile-ordering functionality in a venue or within the vicinity of a venue, such as a restaurant or store.  These systems had the drawbacks in that they did not provide true mobile-ordering and location-tracking functionality.[9]

35.     Another type of conventional system were point-of-sale systems.  These systems could include handheld terminals that staff could use to service customers from a distance.[10]  These systems, however, "typically only allow[ed] the staff member, to take and transmit the order on behalf of the patron."[11]  These systems did not allow a patron to place the order and they were unable to perform location tracking.[12]

36.     Tiare's inventions solve these drawbacks of conventional systems, among others.  Tiare reimagined the mobile-ordering architecture by tracking portable patron units (now known as a smartphone or tablet) and providing a venue-specific application.  The conventional systems had limitations because they were unable to track location because they focused on a fixed kiosk-based or mobile point-of-sale-based solution.  Tiare recognized that it could improve upon the technical aspects of these systems—through providing mobile-ordering software for a venue (such as a restaurant or store chain) on a mobile device and tracking the location of the mobile device to facilitate the fulfillment of the order.

---

[8] *E.g.*, '729 Patent, 2:21–60.

[9] *E.g.*, '729 Patent, 2:21–60.

[10] *E.g.*, '729 Patent, 2:21–60.

[11] *E.g.*, '729 Patent, 2:21–60.

[12] *E.g.*, '729 Patent, 2:21–60.

37.    While the concept and techniques for tracking distributed mobile computing devices of the Asserted Patents are described within the context of providing services, the concept is, at its core, a technical solution of electronic location tracking of distributed mobile computing devices.  Furthermore, Tiare developed this technology well before the advent of modern mobile computing devices such as smartphones and tablets.  Indeed, even location-tracking technologies such as commercial GPS and wireless computer networks (such as 802.11, Bluetooth, and higher-bandwidth cellular data networks) were in their nascent stages of use and could hardly be considered conventional at the time that Tiare came up with the technology embodied in the asserted claims.

38.    The subject matter of the asserted claims is rooted in computer technology and provides an unconventional solution to the problem of tracking locations of distributed mobile devices.  The claimed subject matter enables the centralized location tracking of one or more mobile-computing devices in real-time by integrating location-tracking technology into mobile-computing devices and communicating at least one location update over wireless communication networks, which did not exist in the pre-digital world.  Indeed, even the kiosk-based and point-of-sale-based systems lacked the technical capacity to perform the location tracking enabled by the asserted claims.  The technology utilizes what was at the turn of the century an unconventional use of location tracking sensors integrated into mobile computing devices to determine the location of the mobile computing devices based on electronic signals (*e.g.*, GPS, WiFi, Bluetooth, and/or cellular data) and convey location information to a server system over wireless computer networks.

39.    The claims do not merely recite customizing information or collecting and displaying data.  Although the overall environment is in the context of providing services, the

claims do not simply recite a non-technical business practice; they instead recite a technical solution for tracking the location of mobile-computing devices (and, by extension, the users).

40.    The mobile-ordering field is one rooted in technology.   The field has seen significant patenting activity in recent years, reflecting the technological nature of the field. Technology companies in the mobile-ordering space like DoorDash, GrubHub, Uber, Lyft, Instacart, and Postmates have filed hundreds of patent applications.[13]

41.    Tiare's Patents have likewise been cited in patent applications by technology companies such as AT&T,[14] eBay,[15] Bally Gaming,[16] Intel,[17] RockSpoon,[18] Uptown Network,[19] Quick Check,[20] and Monscierge.[21]   This further underscores that the patent claims are directed to the technical advancements discussed above.

---

[13] *USPTO Patent Full-Text and Image Database,* http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&u=%2Fnetahtml%2FPTO%2Fsearch-adv.htm&r=0&p=1&f=S&l=50&Query=+%28an%2Fdoordash+or+an%2Fgrubhub+or+an%2Flyft+or+an%2F%28uber+and+technologies%29+or+an%2Finstacart+or+an%2Fpostmates%29&d=PTXT (listing over 700 patents).

[14] *See, e.g.*, 10,152,700.

[15] *See, e.g.*, 10,096,011.

[16] *See, e.g.*, 10,403,081.

[17] *See, e.g.*, 8,390,436.

[18] *See, e.g.*, 10,719,858.

[19] *See, e.g.*, 10,127,585.

[20] *See, e.g.*, 9,633,344.

[21] *See, e.g.*, 9,436,958.

42.     Tiare's Patents have undergone extensive examination before the U.S. Patent & Trademark Office ("Patent Office"), spanning the better part of two decades.  Tiare retained highly-skilled patent counsel to prosecute its patents.  Tiare retained Greenblum & Bernstein (including the former Acting Chief Judge of the Patent Office).  For the application that issued as the '414 Patent, Tiare retained Fish & Richardson P.C. for prosecution.  Fish is one of the country's premier patent prosecution law firms in the United States[22] and has prosecuted thousands of patents for technology companies such as Google, Intel, Twitter, Cisco, Adobe, and Apple.[23]

43.     The Patent Office's examination of Tiare's patent portfolio included extensive consideration of Section 101 issues.[24]  During prosecution, the Patent Office expressly considered the eligibility of the patent claims under 35 U.S.C. § 101, the Supreme Court's *Alice v. CLS Bank* decision, and the Federal Circuit decisions applying the *Alice* framework.[25]  The Patent Office

---

[22] *See, e.g.*, *Patent Prosecution*, https://www.fr.com/services/patent-law/patent-prosecution/ ("Our patent prosecutors obtain durable patents that take into account our clients' long-term objectives and that will be able to withstand future challenges."); *Fish & Richardson Secures More Issued Patents in 2020 than Any Other Firm* (March 3, 2021), https://www.fr.com/fish-secures-more-issued-patents-2020/ ("Fish & Richardson obtained more U.S. utility patents in 2020 than any other firm[.]"); *Fish & Richardson Named #1 PTAB Law Firm of 2020 by* Managing Intellectual Property (January 25, 2021), https://www.fr.com/top-ptab-law-firm-2020-mip/ ("Fish & Richardson has been named the #1 law firm at the Patent Trial and Appeal Board (PTAB) for 2020[.]").

[23] *USPTO Patent Full-Text and Image Database*, http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&u=%2Fnetahtml%2FPTO%2Fsearch-adv.htm&r=0&p=1&f=S&l=50&Query=lrep%2Ffish+and+lrep%2Frichardson&d=PTXT.

[24] *See, e.g.*, File History for App. No. 13/073,368 (considering patent claims under *Alice v. CLS Bank* and its progeny and allowing them); File History for App. No. 15/820,195 (same).

[25] *See, e.g.*, File History for App. No. 13/073,368 (considering patent claims under *Alice v. CLS Bank* and its progeny and allowing them); File History for App. No. 15/820,195 (same); Oct. 31, 2018 Notice of Allowance; October 28, 2018 Response to Office Action and Remarks; August 28, 2018 Final Office Action; March 28, 2018 Response to Office Action and Remarks; December 29, 2017 Office Action.

ultimately found that the claims, including the '414 Patent claims, were valid and recited patent-eligible subject matter.

44.     During prosecution, the Patent Office considered the issue of patent eligibility.  The Patent Office began an extensive examination of Section 101 starting in 2014 that spanned over six years across three patent applications examined by multiple examiners.

45.     In 2014, the Patent Office considered Section 101 during the prosecution of Tiare's U.S. Patent No. 9,202,244, and rejected the claims.[26]  The Examiner then suggested amendments and ultimately allowed the claims in 2015.[27]

46.     The Patent Office then examined the asserted '414 Patent under Section 101.  The Examiner rejected the claims in 2017.[28]  Tiare responded and explained in detail how "each of the pending claims recites features that address a problem fundamentally rooted in computer technology and/or operate in an unconventional manner to achieve an improvement in existing technology at the time of the invention."[29]  That included the following assertions regarding the technological background, the subject matter of claims, and the claimed technical solution of real-time electronic tracking of distributed mobile computing devices.[30]

- [T]he subject matter of the instant claims is directed to a process for the centralized real-time location tracking of distributed mobile computing devices. While the concept and techniques for tracking distributed mobile computing devices of the present application are described within the context of providing consumer services, the concept is, at its core, a

---

[26] *See, e.g.*, September 12, 2014 Non-Final Rejection (App. No. 13/073,368); May 13, 2015 Final Rejection (App. No. 13/073,368).

[27] *See, e.g.*, July 15, 2015 Notice of Allowance (App. No. 13/073,368).

[28] *See, e.g.*, December 29, 2017 Non-Final Rejection (App. No. 15/820,195).

[29] *See, e.g.*, March 28, 2018 Response to Non-Final Rejection (App. No. 15/820,195).

[30] *See, e.g.*, March 28, 2018 Response to Non-Final Rejection (App. No. 15/820,195).

technical solution of real-time electronic tracking of distributed mobile computing devices."

- Furthermore, this technology was developed at the turn of the century (see priority date of Sep. 23, 2002) well before the advent of modern mobile computing devices such as smartphones and tablet computers. Indeed, even location tracking technologies such as commercial GPS and wireless computer networks such as 802.11 and Bluetooth were in their nascent stages of use and could hardly be considered "conventional." At the original filing date of the present application, even the terminology of mobile computing had yet to be established. For example, the specification refers to what would now be considered a smartphone or tablet computer by one of skill in the art as "portable patron units" and "portable staff units." . . . .

- [T]he subject matter of each of the claim is "rooted in computer technology" and provides an unconventional solution to the problem of tracking locations of distributed mobile devices. Specifically, the subject matter of the pending claims enables the centralized location tracking of one or more mobile computing devices in real-time by integrating location-tracking technology into mobile computing devices and communicating location updates over wireless communication networks, which did not exist in the pre-digital world . . . .

- [T]he present claims rely on what was at the turn of the century an unconventional use of location tracking sensors integrated into mobile computing devices to determine the location of the mobile computing devices based on electronic signals (e.g., GPS, WiFi, or Bluetooth) and convey location information to a centralized server system over wireless computer networks . . . .

- Although the concept of the present claims is described in the context of providing consumer services, the claims do not simply recite a non-technical business practice, but instead recite a technical solution for tracking the location of mobile computing devices to locate customers.

- The present claims [] recite "a technology-based solution" to locate distributed mobile computing devices (and by extension the users) "that overcomes existing problems" of the common technology of the time; namely "centrally-located kiosks" and "handheld POS [point of sale] devices" neither of which incorporated or required location-tracking capability.

47.     The Examiner credited these factual assertions and allowed the claim that issued as

clam 8 in '414 Patent. The Examiner explained that Tiare's arguments had been "fully considered

and are persuasive."[31]   After Tiare amended the claims to address the eligibility of a different set of claims (by including the "providing . . . a venue-specific application" and "mapping the updated locations" limitations), the Patent Office issued the '414 Patent.[32]

48.     The Patent Office also evaluated under Section 101 Tiare's most-recent patent application (which issued in December, 2021 as U.S. Pat. No. 11,195,224).  The initial independent claims lacked the "venue-specific application" limitations, and the Patent Office rejected them.[33]  Tiare then amended the claims to include the "venue-specific application" limitations, and the Patent Office withdrew the Section 101 rejections.[34]

49.     The Asserted Patents claim patent-eligible subject-matter, and this Court has denied challenges to the eligibility of the claims.   Report and Recommendations Denying Motions to Dismiss (Dkt. 77) and Order Adopting Report and Recommendations (Dkt. 82), *Tiare Technology, Inc. v. Whataburger Restaurants LLC*, No. 2:22-CV-182 (E.D. Tex.).

C.     **Defendant's Infringement**

50.     Defendant provides a venue-specific application, exemplified below.

---

[31] *See, e.g.*, August 28, 2018 Final Rejection (App. No. 15/820,195).

[32] *See, e.g.*, October 31, 2018 Notice of Allowance (App. No. 15/820,195); October 22, 2018 Claim Amendment (App. No. 15/820,195).

[33] *See, e.g.*, April 29, 2020 Non-Final Rejection (App. No. 16/217,798).

[34] *See, e.g.*, November 16, 2020 Final Rejection (App. No. 16/217,798); September 29, 2020 Claim Amendments (App. No. 16/217,798).



51.     For example, the Defendant mobile-ordering solution provides a venue-specific application in which the application functionality is associated with a store-chain (*e.g.*, Defendant), including the ordering and location-tracking functionality.   The Defendant mobile-ordering solution also provides a venue-specific application in which the application functionality is associated with a single store, including the ordering and location-tracking functionality.   The Defendant application, including the software providing the ordering functionality, is an application program that is specifically configured for a venue (*e.g.*, a Defendant store) but may apply to more than one location (*e.g.*, multiple Defendant stores).

52.     Defendant also tracks the location of the smartphone or tablet (and, by extension, the user) to, among other things, including determining an initial location (*e.g.*, to find a local store) and the arrival for pickup of the mobile order.   Defendant accesses the location of the smartphone, for example, during the "Pickup Status" functionality, including as reflected in the device settings showing access to location and requests to access location.   This evidence shows

---

that Defendant utilizes and determines (1) a current location of the smartphone or tablet and (2) an updated location of the smartphone or tablet, including but not limited to mobile ordering.

53.     Defendant has had notice of Tiare and the '414, '729, and '224 Patents, at least as early as the filing of this Complaint.

54.     Defendant's use of the Tiare's patented technology has generated significant revenue and benefits for Defendant.  The app has been used, on information and belief, to complete a significant amount of mobile orders.  Defendant's improper gains through its use of Tiare's patented technology have correspondingly harmed Tiare and its investment in its intellectual property.  This case is to redress that harm.

## VI.     CLAIMS

### A.     Infringement of the '729 Patent

55.      The allegations of each foregoing paragraph are incorporated by reference as if fully set forth herein and form the basis for the following cause of action against Defendant.

56.     The Accused Products are covered by at least claim 1 of the '729 Patent.

57.     Defendant has directly infringed and continues to infringe at least claim 1 of the '729 Patent in violation of 35 U.S.C. § 271(a) by, directly or through intermediaries and without Tiare's authority, making, using, selling, or offering to sell the Accused Products in the United States, or importing the Accused Products into the United States.

58.     Defendant has been on notice of the Asserted Patents since at least the filings of this Complaint.

59.     Defendant has been on notice of its infringement since at least the filing of this Complaint.

60.     Further and in the alternative, Defendant has been actively inducing infringement of at least claim 1 of the '729 Patent in violation of 35 U.S.C. § 271(b).  Users of the Accused Products directly infringed at least claim 1 of the '729 Patent when they used the Accused Products in the ordinary, customary, and intended way.  Defendant's inducements included, without limitation and with specific intent to encourage the infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such consumers (for example, via distributing the Accused Products to mobile phones through app stores and instructing users to use the Accused Products) how to use the Accused Products in the ordinary, customary, and intended way, which Defendant knows or should know infringes at least claim 1 of the '729 Patent.  Defendant's inducements may further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to use the Accused Products within the United States, or knowingly inducing customers to use the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to make, use, sell, or offer to sell the Accused Products in the United States, which Defendant knows or should know infringes at least claim 1 of the '729 Patent.

61.     Defendant knew or should have known of the '729 Patent but was willfully blind to the existence of the '729 Patent.  Defendant has had actual knowledge of the '729 Patent since at least as early as the filing and service of this Complaint.  By the time of the trial of this case, Defendant will have known and intended that its continued actions since receiving such notice would infringe and actively induce and contribute to the infringement of one or more claims of the '729 Patent.  Defendant's infringement of the '729 Patent has been willful and deliberate.

62.    As detailed below, the ordering application and location-tracking functionality through the mobile application provided by Defendant is claimed to infringe the '729 Patent.

63.    Defendant performs a method of using a wireless patron unit (e.g., a smartphone or tablet) within a venue or within the vicinity of the venue.

64.    Defendant provides at least one patron with a wireless patron unit by either permitting the at least one patron to temporarily use a venue-owned wireless patron unit that includes at least one venue specific application program, or by providing at least one venue specific application program to the at least one patron for downloading into a patron-owned wireless communication device that can be used during the at least one patron's visit to the venue.

65.    Defendant provides at least one patron with a wireless patron unit (e.g., a smartphone or tablet) by providing at least one venue specific application program for downloading into a patron-owned wireless communication device (e.g., a smartphone or tablet) that can be used during a visit to the venue, as exemplified above.

66.    Defendant connects the wireless patron unit (e.g., the smartphone or tablet) to a server enabling communication between the wireless patron unit and the server (e.g., the server in communication with the smartphone or tablet via the application), such as a Wi-Fi or cellular connection.

67.    Defendant enters a patron order for at least one item or service provided by the venue into the wireless patron unit.  Defendant enters a patron order (e.g., a user's order) for at least one item or service provided by the venue (e.g., an item from a store menu) into the wireless patron unit (e.g., a smartphone or tablet), exemplified below.



68.     Defendant determines a current location of the wireless patron unit.  Defendant determines the location of, for example, a smartphone or tablet.  This is reflected in the use of the application, as exemplified above.

69.     Defendant also tracks the location of the smartphone or tablet (and, by extension, the user) to, among other things, find local stores and products and determine when a mobile device is in the vicinity of the store, as discussed above.

70.     Defendant updates a status of the patron order, and the current location of the wireless patron unit when the patron moves to a different location, on the wireless patron unit.

71.     Defendant updates a status of the patron order (e.g., a mobile order) on the wireless patron unit (e.g., a smartphone or tablet), including, for example, showing that an order was placed, in progress, cancelled, and mobile-ordering methods, pickup methods, payment options, other options and/or altered/updated.

72.     Defendant updates the current location of the wireless patron unit (e.g., a smartphone or tablet) when the patron moves to a different location.  Defendant also tracks the

location of the smartphone or tablet (and, by extension, the user) to, among other things, determine when a mobile device is in the proximity of the store, as exemplified above.

73.    Defendant displays the patron order on a display of the wireless patron unit (e.g., a smartphone or tablet), including as exemplified above.

**B.    Infringement of the '414 Patent**

74.    The allegations of each foregoing paragraph are incorporated by reference as if fully set forth herein and form the basis for the following cause of action against Defendant.

75.    The Accused Products are covered by at least claim 8 of the '414 Patent.

76.    Defendant has directly infringed and continues to infringe at least claim 8 of the '414 Patent in violation of 35 U.S.C. § 271(a) by, directly or through intermediaries and without Tiare's authority, making, using, selling, or offering to sell the Accused Products in the United States, or importing the Accused Products into the United States.

77.    Defendant has been on notice of the Asserted Patents since at least the filings of this Complaint.

78.    Defendant has been on notice of its infringement since at least the filing of this Complaint.

79.    Further and in the alternative, Defendant has been actively inducing infringement of at least claim 8 of the '414 Patent in violation of 35 U.S.C. § 271(b).  Users of the Accused Products directly infringed at least claim 8 of the '414 Patent when they used the Accused Products in the ordinary, customary, and intended way.  Defendant's inducements included, without limitation and with specific intent to encourage the infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the

United States and instructing and encouraging such consumers (for example, via distributing the Accused Products to mobile phones through app stores and instructing users to use the Accused Products) how to use the Accused Products in the ordinary, customary, and intended way, which Defendant knows or should know infringes at least claim 8 of the '414 Patent.  Defendant's inducements may further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to use the Accused Products within the United States, or knowingly inducing customers to use the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to make, use, sell, or offer to sell the Accused Products in the United States, which Defendant knows or should know infringes at least claim 8 of the '414 Patent.

80.    Defendant knew or should have known of the '414 Patent but was willfully blind to the existence of the '414 Patent.  Defendant has had actual knowledge of the '414 Patent since at least as early as the filing and service of this Complaint.  By the time of the trial of this case, Defendant will have known and intended that its continued actions since receiving such notice would infringe and actively induce and contribute to the infringement of one or more claims of the '414 Patent.  Defendant's infringement of the '414 Patent has been willful and deliberate.

81.    As detailed below, the ordering application and location-tracking functionality through the mobile application provided by Defendant is claimed to infringe the '414 Patent.

82.    Defendant performs the computer-implemented method detailed below.

83.    Defendant provides over a wireless communications channel (*e.g.*, over a cellular, WiFi, and/or Bluetooth network connection), a venue-specific application, as exemplified above.

84.     Defendant communicates, by the one or more processors, with the mobile computing device over the wireless communication channel to authenticate, based on a security protocol, a user of the venue-specific application on the mobile computing device.

85.     Defendant communicates over a wireless communication channel (e.g., over a cellular, WiFi, and/or Bluetooth network connection) to authenticate, based on a security protocol (e.g., a login, password, and/or encrypted communications), a user of the venue-specific application on a smartphone.

86.     Defendant authenticates a user via a login and password into the application (e.g., logging in via a username and password), as well as securing information associated with purchasing the order, such the user's financial account information (e.g., credit card number).

87.     Defendant receives, by the one or more processors, location information from the mobile computing device.  Defendant receives location information of the mobile computing device (e.g., a smartphone or tablet) through, for example, the device's location services, as exemplified above.

88.     Defendant also tracks the location of the smartphone or tablet (and, by extension, the user) to, among other things, find local stores and products and determine when a mobile device is in the vicinity of the store, as discussed above.

89.     Defendant determines, by the one or more processors, a location of the mobile computing device at a first time based on the location information.  Based on the location information provided, Defendant determines the location of the smartphone or tablet, as detailed above.

90.     Defendant maps, by the one or more processors, the location to a region that is associated with a venue, including, for example, mapping the location to a region that is associated

with a store or a group of stores, including such as the stores nearby and/or the region nearby the store utilized for mobile ordering.

91.     Defendant receives, from the mobile computing device, order information for the venue that indicates a user selection of an order option from the venue-specific application. Defendant receives order information from a user input that indicates a service request (*e.g.* a store order) through the venue-specific application, including as exemplified above.

92.     Defendant receives, by the one or more processors, updated location information from the mobile computing device.  Defendant receives updated location information from the mobile computing device (e.g., a smartphone or tablet).  For example, Defendant also tracks the location of the smartphone or tablet (and, by extension, the user) to, among other things, determine when a mobile device is in the proximity of the store, as exemplified above.

93.     Defendant determines, by the one or more processors, an updated location of the mobile computing device at a second time based on the updated location information.  Defendant determines updated locations of the smartphone or tablet at multiple points after receiving the updated location data at a second time, including as the device approaches the site, as detailed above.

### C.     Infringement of the '224 Patent

94.     The allegations of each foregoing paragraph are incorporated by reference as if fully set forth herein and form the basis for the following cause of action against Defendant.

95.     The Accused Products are covered by at least claim 10 of the '224 Patent.

96.     Defendant has directly infringed and continues to infringe at least claim 10 of the '224 Patent in violation of 35 U.S.C. § 271(a) by, directly or through intermediaries and without

Tiare's authority, making, using, selling, or offering to sell the Accused Products in the United States, or importing the Accused Products into the United States.

97.     Defendant has been on notice of the Asserted Patents since at least the filings of this Complaint.

98.     Defendant has been on notice of its infringement since at least the filing of this Complaint.

99.     Further and in the alternative, Defendant has been actively inducing infringement of at least claim 10 of the '224 Patent in violation of 35 U.S.C. § 271(b).  Users of the Accused Products directly infringed at least claim 10 of the '224 Patent when they used the Accused Products in the ordinary, customary, and intended way.  Defendant's inducements included, without limitation and with specific intent to encourage the infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such consumers (for example, via distributing the Accused Products to mobile phones through app stores and instructing users to use the Accused Products) how to use the Accused Products in the ordinary, customary, and intended way, which Defendant knows or should know infringes at least claim 10 of the '224 Patent. Defendant's inducements may further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to use the Accused Products within the United States, or knowingly inducing customers to use the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to make, use, sell, or offer to sell the Accused Products in the United States, which Defendant knows or should know infringes at least claim 10 of the '224 Patent.

100.    Defendant knew or should have known of the '224 Patent but was willfully blind to the existence of the '224 Patent.  Defendant has had actual knowledge of the '224 Patent since at least as early as the filing and service of this Complaint.  By the time of the trial of this case, Defendant will have known and intended that its continued actions since receiving such notice would infringe and actively induce and contribute to the infringement of one or more claims of the '224 Patent.  Defendant's infringement of the '224 Patent has been willful and deliberate.

101.    As detailed below, the ordering application and location-tracking functionality through the mobile application provided by Defendant is claimed to infringe the '224 Patent.

102.    Defendant provides, through its mobile application, a system for locating electronic devices, the system comprising one or more processors and one or more data stores coupled to the one or more processors having instructions stored thereon which, when executed by the one or more processors, causes the one or more processors to perform the operations detailed below.

103.    Defendant provides, over one or more wireless channels (*e.g.*, over a cellular, WiFi, and/or Bluetooth network connection), a venue-specific application to each of a plurality of mobile electronic devices, as exemplified above.

104.    Defendant receives, from each of the plurality of mobile electronic devices, location information through the venue specific application of each respective mobile electronic device. Defendant receives location information of each mobile computing device (e.g., a smartphone or tablet) through, for example, as exemplified above.

105.    Defendant also tracks the location of the smartphone or tablet (and, by extension, the user) to, among other things, find local stores and products and determine when a mobile device is in the vicinity of the store, as discussed above.

106.    Defendant determines locations of each of the plurality of mobile electronic devices based on the location information above.  Based on the location information provided, Defendant determines the location of the smartphone or tablet, as detailed above.

107.    Defendant receives, over the one or more wireless channels, second location information from each of the mobile electronic devices (e.g., a smartphone or tablet), as detailed above.

108.    For example, Defendant also tracks the location of the smartphone or tablet (and, by extension, the user) to, among other things, determine when a mobile device is in the proximity of the store, as exemplified above.

109.    Defendant determines, by the one or more processors, an updated location of each of the mobile computing devices based on the second location information.  Defendant determines updated locations of the smartphone or tablet at multiple points after receiving the updated location data at a second time, including as the device approaches the site, as detailed above.

110.    Defendant receives, from a particular one of the mobile computing device, order information for a venue associated with the venue-specific application.  Defendant receives order information through the venue-specific application, as exemplified above.

111.    Defendant, in response to receiving the order information, sends, to a computing system associated with the venue, for display in a graphical user interface, data indicating the updated location of the particular one of the plurality of mobile electronic devices.

112.    As detailed above, Defendant also tracks the location of the smartphone or tablet (and, by extension, the user) to, among other things, to, among other things, to determine when a mobile device is in the proximity of the store, as exemplified above.

113.     On information and belief, letting Defendant know that functionality is accomplished via sending to a computing system associated with the venue, for display in a graphical user interface, data indicating the updated location of the particular one of the plurality of mobile electronic devices.

## VII.    DAMAGES

114.     The allegations of each foregoing paragraph are incorporated by reference as if fully set forth herein.

115.     For the above-described infringement, Tiare has been injured and seeks damages to adequately compensate it for Defendant's infringement of the Asserted Patents.  Such damages, to be proved at trial, should be no less than the amount of a reasonable royalty under 35 U.S.C. § 284, together with Tiare's costs and expenses, pre-judgment and post-judgment interest, and supplemental damages for any continuing post-verdict or post-judgment infringement, with an accounting as needed.

116.     As set forth above, Defendant's infringement of the Asserted Patents has been willful, such that Tiare seeks treble damages under 35 U.S.C. § 284 as appropriate.

117.     Defendant's willful infringement of the Asserted Patents renders this case exceptional under 35 U.S.C. § 285, such that Tiare seeks all reasonable attorneys' fees and costs incurred in this litigation, together with pre-judgment and post-judgment interest thereon.

## VIII.    PRAYER FOR RELIEF

Tiare respectfully requests the following relief:

a.     A judgment in favor of Tiare that Defendant has infringed each Asserted Patent, whether literally or under the doctrine of equivalents, and that such infringement is willful as described herein;

b.      A judgment and order requiring Defendant to pay Tiare its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of each Asserted Patent as provided under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed; and

c.      A judgment and order requiring Defendant to pay Tiare enhanced damages for willful infringement as provided under 35 U.S.C. § 284;

d.      A judgement and order enjoining Defendant from infringing upon the Asserted Patents;

e.      A judgment and order finding this case exceptional and requiring Defendant to pay Tiare its reasonable attorneys' fees and costs incurred in this litigation pursuant to 35 U.S.C. § 285, together with pre-judgment and post-judgment interest thereon; and

f.      Such other and further relief as the Court deems just and proper.

## IX.  JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Tiare requests a jury trial of all issues triable of right by a jury.

Dated: May 30, 2023                                Respectfully submitted,

                                                   By:  /s/ William E. Davis, III
                                                   William E. Davis, III
                                                   Texas State Bar No. 24047416
                                                   bdavis@davisfirm.com

                                                   Christian J. Hurt
                                                   Texas State Bar No. 24059987
                                                   churt@davisfirm.com

**The Davis Firm, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

***Counsel for Tiare Technology, Inc.***